Case No. 12-2536

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN,
a Michigan non-profit corporation,

*Plaintiff-Appellant*

vs.

FEDERAL BUREAU OF INVESTIGATION, AND
UNITED STATES DEPARTMENT OF JUSTICE,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division
Case No. 2:11-cv-13154

---

**REPLY BRIEF FOR PLAINTIFF-APPELLANT**

---

Nusrat J. Choudhury
Hina Shamsi
American Civil Liberties
  Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 519-7876

Mark P. Fancher
Michael J. Steinberg
American Civil Liberties
  Union Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6822

Stephen C. Borgsdorf
Dykema Gossett PLLC
2723 South State
  Street, Suite 400
Ann Arbor, MI 48104
(734) 214-7663

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..........................................................................ii

**INTRODUCTION** .......................................................................................1

**ARGUMENT** ..............................................................................................2

I)   The District Court Erred in Allowing the FBI to Keep Secret Publicly-Available Racial and Ethnic Information About Michigan Communities ...............2

   A)   Disclosure of publicly-available racial and ethnic information about Michigan communities cannot reasonably be expected to cause Exemption 7A harm .......................................................................................................3

   B)   Exemption 1 does not apply to the publicly-available racial and ethnic information about Michigan communities that Defendants withhold..................8

   C)   Defendants failed to meet their burden to segregate and disclose non-exempt, publicly-available racial and ethnic information about Michigan communities..............................................................................................10

II)   This Court Should Establish a Fair and Transparent Process for Adjudicating Disputes Over an Agency's Possible Reliance on a FOIA Exclusion.....................12

**CONCLUSION**..........................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Abdelfattah v. U.S. Dep't of Homeland Sec.*,
  488 F.3d 178 (3d Cir. 2007) ...................................................................11

*Beauman v. FBI*,
  Civ. No. 92-7603 (C.D. Cal. Apr. 28, 1993) .......................................15

*Becker v. IRS*,
  34 F.3d 398 (7th Cir. 1994) ..................................................................10

*Blackwell v. FBI*,
  680 F. Supp. 2d 79 (D.D.C. 2010) ..........................................................6

*Campbell v. Dep't of Health & Human Servs*.,
  682 F.2d 256 (D.C. Cir. 1982) ...........................................................4, 7

*EPA v. Mink*,
  410 U.S. 73 (1973) ................................................................................18

*Heine v. Raus*,
  399 F.2d 785 (4th Cir. 1968) ................................................................18

*Jifry v. Fed. Aviation Admin.*,
  370 F.3d 1174 (D.C. Cir. 2004) ...........................................................19

*Jones v. FBI*,
  41 F.3d 238 (6th Cir. 1994) ..................................................................11

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) .............................................................13

*Phillippi v. CIA*,
  546 F.2d 1009 (D.C. Cir. 1976) ..................................................... 12, 13

*Pub. Citizen. Inc. v. Rubber Mfrs. Ass'n*,
  533 F.3d 810 (D.C. Cir. 2008) .............................................................12

*Ray v. Turner*,
  587 F.2d 1187 (D.C. Cir. 1978) ...........................................................11

*Roth v. U.S. Dep't of Justice*,
   642 F.3d 1161 (D.C. Cir. 2011) ...................................................... 13, 18

*Rugiero v. U.S. Dep't of Justice*,
   257 F.3d 534 (6th Cir. 2001) ..............................................................10

*Solar Sources, Inc. v. United States*,
   142 F.3d 1033 (7th Cir. 1998) ............................................................18

*Steinberg v. U.S. Dep't of Justice*,
   No. 93-2409, 1997 WL 349997 (D.D.C. June 18, 1997) ....................................15

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ............................................................19

*Wilner v. NSA*,
   592 F.3d 60 (2d Cir. 2009 ) ........................................................ 18, 20

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ............................................................14

**Statutes**

5 U.S.C. § 552(c)(1) ............................................................... 17, 20

5 U.S.C. § 552(c)(2) ............................................................... 14, 20

5 U.S.C. § 552(c)(3) ............................................................... 14, 20

**Other Authorities**

132 Cong. Rec. H9455-05 (daily ed. Oct. 8, 1986), 1986 WL 787058
   (statement of Rep. English and Kindness) ................................................13

132 Cong. Rec. S14270-01 (daily ed. Sept. 30, 1986), 1986 WL 785375
   (statement of Sen. Leahy) ...............................................................13

Attorney General's Memorandum on the 1986 Amendments to the
   Freedom of Information Act (Dec. 1987), *available at*
   http://www.justice.gov/oip/86agmemo.htm .............................................. 15, 16

**Rules**

Fed. R. App. P. 10(a) ...............................................................................10

## **INTRODUCTION**

For the first time in this litigation, Defendants' brief makes clear that they withhold the limited information Plaintiff seeks—publicly-available racial and ethnic information about Michigan communities—under only Exemption 7A, which applies to law enforcement records, and *not* Exemption 1, which applies to classified information.  *See* Brief for Appellees ("Defs.' Br.") 37.  In invoking Exemption 7A, Defendants principally rely on broad assertions about the "ethnic aspects" of national security investigations to argue that disclosure of public source, community-wide data about racial and ethnic populations would harm investigations of specific people or groups.  But race or ethnicity cannot be the sole or primary factor supporting an investigation, and disclosure of this limited information, without additional identifying or conduct-based data (which Plaintiff does not seek), could not reasonably be expected to jeopardize investigations.  This Court should thus hold that Exemption 7A does not apply to any publicly-available racial or ethnic information in the contested records and order its segregation and disclosure.

Defendants also fail to justify the use of a secret, non-adversarial process to adjudicate Freedom of Information Act ("FOIA") exclusion claims.  Contrary to both FOIA's purpose of disclosure and the Glomar doctrine, which courts created

to accommodate government secrecy concerns, Defendants argue for an entirely secret process as a matter of first recourse.  Unlike Plaintiff's alternative Glomar-based proposal, that process would not protect the interests of the courts, FOIA litigants, or the public, and Defendants do not show that it could.  Defendants' arguments also entirely ignore the inability of a secret and one-sided process to protect the government's own asserted secrecy interest, and overstate any purported negative consequences that might result from Plaintiff's proposed procedure.  This Court should thus vacate the district court's Section 552(c) ruling and establish the use of a Glomar-like procedure for the adjudication of FOIA exclusion claims.

## **ARGUMENT**

### I)    **The District Court Erred in Allowing the FBI to Keep Secret Publicly-Available Racial and Ethnic Information About Michigan Communities.**

Defendants cannot keep secret publicly-available racial and ethnic information from 105 documents withheld in full and 40 documents withheld in part under Exemption 7A, and they do not withhold this information under Exemption 1.  The FOIA thus requires them to segregate and disclose this information, including census data and population statistics, for the reasons discussed below.

2

## A) Disclosure of publicly-available racial and ethnic information about Michigan communities cannot reasonably be expected to cause Exemption 7A harm.

The parties do not dispute that the withheld records were compiled for law enforcement purposes or that each contains *some* information that may be properly withheld under Exemption 7A. The parties' sole dispute concerns whether Defendants have shown that they can keep secret the discrete, publicly-available, racial and ethnic information that Plaintiff seeks because disclosure could reasonably be expected to harm FBI investigations. Defendants fail to meet their burden for three principal reasons.

First, at the heart of Defendants' Exemption 7A claim is their reliance on the sweeping and generalized assertion made in the FBI's Domestic Investigations and Operations Guide ("DIOG") that "[n]ational security investigations often have ethnic aspects." Defs.' Br. 24.[1] But Defendants place far too much weight on that assertion. *Even if* members of a suspected criminal organization share a common race or ethnicity, that descriptor cannot be the only—or even the most significant—suspect characteristic because race or ethnicity cannot be the sole, dominant, or primary basis for investigation. Ex. A to Declaration of Nusrat J.

---

[1] The DIOG contends (without support) that this is so because "members of a foreign terrorist organization may be primarily or exclusively from a particular country or area of the world" and "ethnic heritage is frequently the common thread running through violent gangs or criminal organizations." Ex. A to Choudhury Decl., R. 24-2, at 31, Page ID # 874 (DIOG § 4.3(A)).

3

Choudhury ("Choudhury Decl."), R. 24-2, at 30–31, Page ID # 873–74 (DIOG

§ 4.3 (A)–(B)); *see* Brief for Plaintiff-Appellant ("Pl.'s Br.") 32 n.13.  The FBI

must have "other information," such as conduct-based evidence that supports its

investigative interest in a person.  Ex. A to Choudhury Decl., R. 24-2, at 32, Page

ID # 875 (DIOG § 4.3(C)).  But Plaintiff does not seek that kind of information or

even additional target descriptors such as age, physical appearance, occupation, or

gender.  Plaintiff *only* seeks disclosure of census data, population statistics, and

demographic information about racial or ethnic communities subjected to FBI

intelligence collection.  Disclosure of this information cannot reasonably be

expected to permit specific suspects to construct false alibis or defenses or to

destroy evidence, as Defendants assert, absent the disclosure of target- or conduct-

specific information capable of tipping them off.  *See* Defs.' Br. 24; *Campbell v.*

*Dep't of Health & Human Servs*., 682 F.2d 256, 259 (D.C. Cir. 1982).  Further,

even if the FBI were somehow to draw a legitimate link between a racial or ethnic

community and a specific person or group under investigation, disclosure of *only*

publicly-available, community-wide data cannot reasonably be expected to harm

those specific investigations because there are often multiple criminal or terrorist

organizations that target any particular racial or ethnic community, as Defendants'

own documents show.[2]

---

[2] *See* Ex. K to Declaration of David M. Hardy ("Hardy Decl."), R. 19-2, at DE-

4

Defendants' reliance on the DIOG's broad assertion concerning the "ethnic aspects" of national security investigations actually underscores the need for disclosure of the information Plaintiff seeks. Defs.' Br. 24. The DIOG purports to justify granting the FBI a sweeping racial and ethnic mapping power that may be used to profile entire racial and ethnic communities for intelligence collection and investigation based on unsupported stereotypes ascribing criminal propensity to them.[3] The public needs to know whether the FBI is appropriately identifying "ethnic aspects" of national security investigations or inappropriately profiling communities, and which communities are affected. It is precisely this sort of information that will not harm any *specific* investigation.

Second, Defendants' assertion that disclosure of publicly-available racial and ethnic information will cause harm by revealing the "scope or focus" of

---

GEOMAP 484–85, Page ID # 581–82 (noting the existence of multiple "Sunni terrorist groups" and groups that "use an extreme and violent interpretation of the Muslim faith" of interest to FBI Detroit Field office); Ex. H to Choudhury Decl., R. 24-10, at 1, Page ID # 969 (recognizing that "[t]he Trinitario Street Gang is one of several Hispanic gangs operating in the Philadelphia Division"); Ex. J to Choudhury Decl., R. 24-12, at 2, Page ID # 986 (referring to multiple "Russian criminal enterprises" in the San Francisco area).

[3] *See* Pl.'s Br. 12–13, 34–35 & n.16; *see, e.g.*, Ex. K to Hardy Decl., R. 19-2, at DE GEOMAP 484–85, Page ID # 581–82 (documenting opening of a suspicionless Domain Assessment investigation of Michigan's Middle Eastern and Muslim population); Ex. J to Choudhury Decl., R. 24-12, Page ID # 984–87 (same for San Francisco Chinese and Russian populations).

investigations or FBI "areas of interest" fails for the same reason as above. Defs.' Br. 25, 27, 29. Plaintiff seeks information concerning entire communities—not suspected persons or groups—and disclosure cannot reasonably be expected to reveal the scope or focus of any specific investigation.[4] While it would inform the public to know that the FBI is collecting intelligence on, for example, Michigan's Chinese and Russian communities (as the FBI has already disclosed for other states), disclosure of census data or population statistics would not reveal any specific angle to investigations of suspected Chinese or Russian criminal syndicates.[5] Nor would it reveal any *unknown* FBI area of interest. Surely an individual engaged in criminal conduct knows they bear the risk of FBI investigation, and the public is already well aware of the FBI's racial and ethnic mapping program, *see* Pl.'s Br. 35, 41.[6] Criminals can, and likely have, deduced that if their organizations or networks have any arguably "ethnic aspects," the FBI

---

[4] This is true not only because the information sought is publicly-available, but also because it concerns communities as a whole—not specific investigation targets, subjects, or witnesses.

[5] Arguing to the contrary would be akin to claiming that in the 1980s, disclosure of FBI interest in Southern Italian communities would have tipped off the Gambino crime family to an FBI investigation of which it was entirely unsuspecting.

[6] For the same reason, disclosure of the information sought would not disclose the "FBI's internal practices" or "aid others in circumventing future FBI investigations," as Defendants suggest. Defs.' Br. 26 (citing *Blackwell v. FBI*, 680 F. Supp. 2d 79, 92 (D.D.C. 2010) (internal quotation marks omitted)).

is already targeting those communities for intelligence collection and mapping

through the Domain Management program.  The only additional information

Plaintiff seeks are the identities of the Michigan communities being tracked, and

disclosure of that information cannot reasonably be expected to reveal any

unknown investigatory scope, focus, or area of interest as discussed above.[7]

Third, contrary to Defendants' contention, the Hardy Declaration fails to

establish that Exemption 7A applies to publicly-available racial and ethnic

information and does not merit deference.  *See* Defs.' Br. 27–28.  While

Defendants emphasize the declaration's length and the fact that it describes

individual documents, they fail to show how the declaration *explains* with

reasonable specificity how the discrete, community-wide, publicly-available

information Plaintiff seeks is withholdable under Exemption 7A.  *See* Pl.'s Br. 33;

*Campbell*, 682 F.2d at 259 (application of Exemption 7A requires explanation of

how harm will flow from "particular kinds" of records).

Nor does the Hardy Declaration deserve deference in light of the evidence in

the record contradicting its assertions of harm.  *See* Pl.'s Br. 33–36 (describing

Defendants' disclosure of publicly-available racial and ethnic information from

---

[7] Defendants argue that disclosure of the identities of public source websites would
cause harm.  Defs.' Br. 27.  But Plaintiff does not seek such information; it only
seeks publicly-available racial or ethnic information about Michigan communities.
*See* Pl's Br. 20.

documents similar to those kept secret here).  Defendants misconstrue the import

of this evidence.  Plaintiff does not allege that these disclosures are evidence of bad

faith or a waiver of Defendants' Exemption 7A claim under the public domain

doctrine.  *See* Defs.' Br. 30.  Rather, the disclosures undermine the Hardy

Declaration's assertions and concretely illustrate that release of the discrete

information Plaintiff seeks will not cause harm to specific investigations, but will

instead inform communities that they are targeted for potentially inappropriate

intelligence collection.  *See* Pl.'s Br. 33–36.[8]

> **B) Exemption 1 does not apply to the publicly-available racial and ethnic information about Michigan communities that Defendants withhold.**

Plaintiff appealed the district court's Exemption 1 ruling *only* to the extent

that it is interpreted to permit Defendants to keep secret any publicly-available

racial and ethnic information—an issue the district court did not specifically

address.  *See* Pl.'s Br. 37; Op. and Order ("Op."), R. 35, at 8–12, Page ID # 1684–

---

[8] For example, the New Jersey FBI's partial release of a Domain Intelligence Note
—a type of document withheld in full in this litigation—shows that release of *only*
the publicly-available information in the document, including census data, would
not reveal target identities or any investigation scope, focus, or area of interest.
*See* Pl.'s Br. 33–34 (discussing Ex. E to Choudhury Decl., R. 24-7, at 1, 4, 11,
Page ID # 932, 935, 942).  Yet, that disclosure would still inform the public that
the FBI is studying Central American and Hispanic populations—information that
is critically important in light of the FBI's use of community data to target further
intelligence collection and the recent expansion of FBI authority to conduct
suspicionless assessment investigations.  *See* Pl.'s Br. 12–14 & n.14.

8

88. Now, Defendants clearly state for the first time on appeal that they "did *not* invoke Exemption 1 to withhold any public source information, including public source information about race or ethnicity." Defs.' Br. 37 (emphasis in original).[9] Defendants make clear that "to the extent any public source information was withheld from responsive records, such information was withheld pursuant to Exemption 7(A)." *Id.*[10]

Defendants nevertheless appear to reserve the right to invoke Exemption 1 broadly in future cases over publicly-available information and its use in intelligence activities. *See* Defs.' Br. 37–38 ("Exemption 1 broadly protects intelligence activities, sources, and methods. The fact that the FBI may use publicly available information as part of its intelligence-gathering activities, and

---

[9] Contrary to Defendants' contentions, Defendants' declarations and briefs in the proceedings below failed to indicate whether their Exemption 1 withholdings included publicly-available racial or ethnic information. *See* Reply Br. in Support of Defs.' Mot. for Summ. J. and Opp'n to Pl.'s Cross-Mot. for Partial Summ. J., ("Defs.' Reply"), R. 28, at 12–15, Page ID # 1496–99; Reply Memo. in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. ("Pls.'s Cross-Mot. Reply"), R. 34, at 7, Page ID # 1672; Am. Corr. Memo. in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. and Opp'n to Defs.' Mot. for Summ. J., R. 33, at 22, 25–29, Page ID # 1646, 1649–1653. Defendants now clarify that "[t]he fact that documents from which defendants withheld information pursuant to Exemption 1 may also contain public source information that was withheld does not mean that the public source information was withheld pursuant to Exemption 1." Defs.' Br. 37.

[10] Because Plaintiff does not challenge any withholdings other than Defendants' withholding of publicly-available racial and ethnic information, the three pages from which Defendants redacted information only under Exemption 1, and not Exemption 7A, are not contested in this appeal. *See* Defs.' Br. 31.

release of that information may cause harm to national security, is therefore

encompassed in such protection."). This Court need not address that argument

because it does not apply to the records at issue in this appeal.[11]

### C) Defendants failed to meet their burden to segregate and disclose non-exempt, publicly-available racial and ethnic information about Michigan communities.

Defendants concede that the district court erred in failing to determine

whether Defendants properly disclosed all reasonably segregable, non-exempt

information from the withheld records. *See* Defs.' Br. 39; *see also Rugiero v. U.S.*

*Dep't of Justice*, 257 F.3d 534, 553 (6th Cir. 2001); Pl.'s Br. 42. But they oppose

Plaintiff's request for remand and ask this Court to conclude, following de novo

review of the record, that they carried out their responsibility to segregate and

disclose non-exempt information. Defs.' Br. 39.

Plaintiff does not contest that this Court may decide the issue of

segregability based on the record that was before the district court, rather than

remanding it to that court. *See* Fed. R. App. P. 10(a) (limiting appellate record to

the evidentiary record before the lower court); *Becker v. IRS*, 34 F.3d 398, 406 (7th

Cir. 1994) (making segregability determination after de novo review of record that

---

[11] To the extent that Defendants contend that publicly-available racial and ethnic information is so intertwined with exempt information that it is not segregable from their Exemption 1 withholdings, Defendants fail to factually support that claim and evidence in the record contradicts it. *See* Pl.'s Br. 43; *infra* p. 11.

was before district court).  That record conclusively demonstrates that Defendants
failed to carry out their burden to disclose all reasonably segregable, non-exempt
information, including the publicly-available racial and ethnic information Plaintiff
seeks.  *See* Pl.'s Br. 43–44.  Contrary to Defendants' contention, neither the Hardy
Declaration's description of Defendants' process for making their segregability
decision nor its description of the documents themselves provide the required
"factual recitation" of where and how non-exempt information is dispersed in the
documents so as to justify non-disclosure.  *See* Pl.'s Br. 43; *Abdelfattah v. U.S.
Dep't of Homeland Sec.*, 488 F.3d 178, 187 (3d Cir. 2007).

Should this Court determine that the record before it is inconclusive, in
camera inspection of the contested records, or a sample of the records, is necessary
to inform a "responsible de novo determination" as to whether Defendants properly
segregated and disclosed non-exempt information.  *Ray v. Turner*, 587 F.2d 1187,
1195 (D.C. Cir. 1978); *see* Pl.'s Cross-Mot. Reply 5 (showing that three of four
factors weigh in favor of in camera review in this case); *see, e.g.*, *Jones v. FBI*, 41
F.3d 238, 243 (6th Cir. 1994) (discussing factors guiding judicial discretion to
conduct in camera review and holding that district court erred in not reviewing
documents in camera).  Because this Court may not conduct in camera review of
records that were not before the district court, if it determines the factual record is

not dispositive, it should remand so Plaintiff may request in camera review in the district court.

### II)    This Court Should Establish a Fair and Transparent Process for Adjudicating Disputes Over an Agency's Possible Reliance on a FOIA Exclusion.

The parties do not dispute that the government has an interest in keeping secret the existence of records that fall within the FOIA's exclusion provision.  Nor do they dispute that the process by which courts adjudicate exclusion claims should protect this interest.  The parties' sole dispute concerns whether this Court should reject the district court's use of secret and one-sided process and establish a procedure for resolving exclusion claims akin to the familiar "Glomar" process. Defendants incorrectly contend that its use in the exclusion context is contrary to the FOIA statute and unnecessary because of the availability of ex parte, in camera procedures.  Defs.' Br. at 40, 42.  This Court should reject the categorical use of ex parte, in camera proceedings for resolution of FOIA exclusion claims for the following three reasons.

First, Defendants' promotion of secret process as a first recourse—rather than a last resort—is contrary to the FOIA statute's "strong presumption in favor of disclosure." *Pub. Citizen. Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 813 (D.C. Cir. 2008); *see Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (emphasizing

need to "create as complete a public record as is possible" prior to resort to in

camera review).[12]  Doctrinally, courts devised the Glomar process to permit public

and adversarial adjudication of withholding claims while accommodating agency

assertions that the very fact of the existence of requested records is itself

withholdable information.  *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1178

(D.C. Cir. 2011).[13]  Explanatory statements by FOIA's congressional sponsors

indicate that the purpose of the FOIA exclusion provision was to codify the

government's authority "to withhold the fact of the existence or nonexistence of

specific records" as set forth in the Glomar case.  132 Cong. Rec. H9455-05 (daily

ed. Oct. 8, 1986), 1986 WL 787058 (statement of Rep. English and Kindness)

(citing *Phillippi*, 546 F.2d 1009); 132 Cong. Rec. S14270-01 (daily ed. Sept. 30,

1986), 1986 WL 785375 (statement of Sen. Leahy).

    Both doctrine and the legislative history thus make clear that Glomar-like

procedures are appropriately applied to preserve the government's interest in the

secrecy of the existence of excludable records while enabling public and

---

[12] *See also Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1185 (D.C. Cir. 2011)
("Reviewing documents *in camera* is no substitute for the government's obligation
to provide detailed public indexes and justifications whenever possible.") (internal
quotation marks omitted).

[13] Glomar cases are regularly adjudicated without the need for in camera
inspection.  *See, e.g*., *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009)
(rejecting request for in camera inspection where agency declarations were
adequate and the record lacked evidence contradicting its withholding claims).

13

adversarial adjudication of claims that the government improperly relied on an exclusion.[14]  And these procedures are hardly novel because the Glomar process is routinely used by courts around the country.  *See* Pl.'s Br. 48 (citing circuit decisions).

Defendants rely almost exclusively on the Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act ("AG Memorandum") to argue that application of Glomar procedures in the exclusion context is contrary to the FOIA statute and that only secret and one-sided process can protect the government's asserted interest in keeping secret any reliance on a FOIA exclusion.  *See* Defs.' Br. 41–42 & n.9.  But the AG Memorandum is not binding authority on this Court; it is the agency's interpretation of how it will apply the law.[15]  And Defendants fail to point to anything in the text of the FOIA

---

[14] The FOIA's text also supports this conclusion.  The Section 552(c)(2) and Section 552(c)(3) exclusions mirror the "official acknowledgement" doctrine in Glomar cases.  Pursuant to statutory text, official confirmation of an informant's status removes information from the ambit of Section 552(c)(2); and declassification of the fact of the existence of the specific categories of FBI records described in Section 552(c)(3) removes them from the scope of that exclusion.  5 U.S.C. § 552(c)(2)–(3).  Similarly, the government may not issue Glomar responses where it has already acknowledged "the existence of [responsive] agency records *vel non*."  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).

[15] Although Defendants cite two unpublished district court decisions in support of their claim for use of secret and one-sided procedures in the exclusion context, neither is binding on this Court.  Defs.' Br. 40–42 (citing *Steinberg v. U.S. Dep't of*

statute or its legislative history—or any other legal authority—to support their arguments against the use of Glomar-like procedures.  Defs.' Br. 40–42.

Moreover, the AG Memorandum itself provides no authority or persuasive analysis against the use of Glomar procedures in the exclusion context.  It contends that use of a Glomar procedure would disclose the government's reliance on FOIA exclusions.  AG Memorandum § G(4) (Dec. 1987), *available at* http://www.justice.gov/oip/86agmemo.htm.  But it does not explain why requiring the government to explain its determination that a FOIA request seeks excludable records—without confirming or denying that any excludable records even exist— would disclose this information.  Precisely *because* the government would not disclose the existence (or nonexistence) of the requested records, a statement that the government *does* interpret a request as seeking excludable records would *not* reveal whether the government in fact relied on an exclusion.[16]

---

*Justice*, No. 93-2409, 1997 WL 349997 (D.D.C. June 18, 1997); *Beauman v. FBI*, Civ. No. 92-7603 (C.D. Cal. Apr. 28, 1993)).

[16] In the adjudication process laid out in Plaintiff's opening brief, the government would indicate in its response to a FOIA request whether it determined that the request (or a portion of it) seeks excludable records, without confirming or denying that those records exist.  *See* Pl.'s Br. 49–50.  Because Defendants did not make such a statement here, Plaintiff asked the district court to order the government to address this issue even though the litigation had already progressed.  *Id*. at 49. Should this Court remand for adjudication of the exclusion claim through the proposed procedure, a Glomar-like response would still preserve Defendants'

Even the sole scenario presented by the AG Memorandum to explain why a Glomar procedure is purportedly inappropriate for the exclusion context—a FOIA request "seeking records on named persons or entities"—is easily handled under Plaintiffs' proposed procedure. AG Memorandum § G(4). Applying Plaintiffs' procedure to that scenario shows how: In response to any such FOIA request, the FBI could state that a portion of the request seeks records that would be excludable under Section 552(c)(1), but that it can neither confirm nor deny the existence of excludable records.[17] The FOIA requester would bring an exclusion claim challenging that determination. The FBI could then argue that the determination was proper because 1) the FOIA request is so broad as to encompass records about unsuspecting targets of ongoing criminal investigations, 2) those records are law enforcement records properly withheld under Exemption 7A, 3) disclosure could reasonably be expected to inform the targets that they are currently under investigation, and 4) to confirm or deny the existence of the records would harm those ongoing criminal investigations. The FOIA requester could respond with evidence establishing that certain subjects of ongoing investigations are already

asserted secrecy interest because Defendants would neither confirm nor deny the existence of any excludable records.

[17] Alternatively, the FBI could respond that it does not interpret the request as seeking excludable records, in which case the FOIA requester would not bring an exclusion claim.

aware that they are investigation targets, and argue that Section 552(c)(1) does not apply to the portion of the request seeking those records.  *See* 5 U.S.C. § 552(c)(1)(B)(i).[18]  The court would then decide the extent to which the government's determination was proper.

At no point would this process disclose the existence of excludable records or even the government's reliance on a FOIA exclusion.

Second, Defendants argue that adjudication of FOIA exclusion claims through a Glomar-like procedure is unnecessary because of the availability of in camera, ex parte review of their declaration addressing any possible reliance on an exclusion.  Defs.' Br. 42.  But that argument fails to address the negative consequences of disfavored secret process for courts, the public, and FOIA requesters, which Plaintiff identified.  *See* Pl.'s Br. 52–57.  Moreover, Defendants' argument completely ignores that secret and one-sided adjudication would not even protect their own asserted interest in secrecy in the event of an adverse judicial ruling by a lower court that is later reversed on appeal.  *See* Pl.'s Br. 55–56.  This Court should reject Defendants' request for procedures that assume the government will prevail against exclusion claims *all* of the time.  *Id.* at 56.

---

[18] The requester could also argue that Section 552(c)(1) would *not* apply to the portions of the request seeking records concerning closed investigations, because disclosure of those records could not reasonably be expected to harm ongoing investigations as Section 552(c)(1) requires.  *See* 5 U.S.C. § 552(c)(1)(B)(ii).

Defendants note that the FOIA contemplates the *possibility* of ex parte, in camera review of documents to adjudicate exemption claims. Defs.' Br. 42. But that fact does not counsel in favor of a *categorical rule* that all FOIA exclusion claims should be resolved through a secret process. FOIA caselaw makes clear that the procedures for adjudicating government secrecy claims should be as public and adversarial as possible prior to the resort to ex parte, in camera proceedings. *See Roth*, 642 F.3d at 1185 (recognizing that in camera review "is no substitute" for public and adversarial process) (internal quotation marks omitted); *Wilner v. NSA*, 592 F.3d 60, 75–76 (2d Cir. 2009) ("A court should only consider information *ex parte* and *in camera* that the agency is unable to make public if questions remain after the relevant issues have been identified by the agency's public affidavits and have been tested by plaintiffs."); *see also EPA v. Mink*, 410 U.S. 73, 93 (1973) (in camera inspection "need not be automatic"). Defendants also rely on the overbroad and sweeping proposition that "national security interests permit *ex parte* submissions." Defs.' Br. 44. But the cases they cite actually *support* Plaintiff's argument that ex parte proceedings are "inconsistent" with normal judicial procedures and should be a last resort. *Heine v. Raus*, 399 F.2d 785, 791 (4th Cir. 1968).[19]

---

[19] *See Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1044 (7th Cir. 1998) ("[S]ubmission of documents and declarations in camera should be accompanied

18

Third, Defendants vastly overstate any purported negative consequences that would result from the use of a Glomar-like procedure to adjudicate FOIA exclusion claims. They contend that the process would always require the government to respond in the affirmative when asked whether it interprets a FOIA request to seek records that would fall under the FOIA's exclusion provision (whether or not they exist) in order to prevent disclosing when an exclusion is (or is not) at play. Defs.' Br. 43. But the Glomar procedure did not open the floodgates of litigation, and neither will use of analogous procedures here. As in the Glomar context, adjudication of Section 552(c) claims through a Glomar-like procedure *may* result in *some* litigation concerning exclusions when no responsive records exist or no exclusion could apply. But Defendants would not need to respond affirmatively when it is patently unreasonable to interpret a FOIA request as seeking records that fall under Section 552(c) due to the subject matter of the request or the type of records requested.[20] And the fact that it may simply be easier

---

by as much of a public record as possible.") (internal quotation marks omitted); *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973) (recognizing that in camera review is "conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure"). Moreover, *Jifry v. Federal Aviation Administration*, 370 F.3d 1174, 1184 (D.C. Cir. 2004), was not a FOIA case, and is therefore less apposite than Plaintiff's cases.

[20] For example, it would be unreasonable to interpret a FOIA request seeking records about the number of bullet proof vests the FBI purchased in 2012 as seeking records falling under any of the three FOIA exclusions. *See* 5 U.S.C.

for Defendants to rely on a secret, one-sided process does not tip the scales against use of a Glomar-like procedure.

Defendants also contend that use of a Glomar-like procedure would require them to simply parrot the terms of the exclusion provision in their briefing. Defs.' Br. 43. But that is not the case. The government's briefing would be nearly identical to Glomar briefing; it would concern the specifics of the FOIA request and whether the FOIA allows the government to refuse to answer it. *See, e.g.*, *supra* pp. 16–17 (discussing use of Glomar-like procedure to adjudicate exclusion claim concerning FOIA request "seeking records on named persons or entities"); *cf. Wilner*, 592 F.3d at 75 (discussing parties' briefing concerning whether Exemption 6 precludes acknowledgment of existence of requested records).

This Court should thus vacate the district court's Section 552(c) ruling and remand for adjudication consistent with Plaintiff's proposal.

---

§ 552(c)(1) (certain records concerning ongoing criminal investigations of unsuspecting targets); *id*. § 552(c)(2) (records identifying undisclosed names of confidential informants); *id*. § 552(c)(3) (FBI records concerning counterintelligence or foreign intelligence information where existence or nonexistence of records itself is classified information). Defendants' statement that they do not interpret such a request as seeking excludable records would not reasonably permit FOIA requesters to piece together with any certainty situations in which the government has in fact relied on an exclusion.

## **CONCLUSION**

For the foregoing reasons and those expressed in Plaintiff's opening brief, Plaintiff respectfully requests that the Court: 1) reverse the judgment of the district court and hold that Defendants improperly withheld publicly-available racial and ethnic information under Exemption 7A; 2) clarify that the district court's Exemption 1 holding does not apply to any publicly-available racial or ethnic information in the contested records; 3) hold that Defendants failed to discharge their burden to segregate and disclose all non-exempt information, including publicly-available information from the contested records, and order segregation and disclosure of that information; and 4) vacate the district court's Section 552(c) ruling and remand for adjudication consistent with Plaintiff's proposal.


April 22, 2013                                    /s/Nusrat Choudhury
                                                  Nusrat Choudhury
                                                  Hina Shamsi
                                                  National Security Project
                                                  American Civil Liberties Union
                                                    Foundation
                                                  125 Broad Street, 18th Floor
                                                  New York, NY 10004
                                                  (212) 519-7876
                                                  nchoudhury@aclu.org
                                                  hshamsi@aclu.org

                                                  Stephen C. Borgsdorf (P67669)
                                                  Dykema Gossett PLLC

Cooperating Attorneys,
American Civil Liberties Fund
  of Michigan
2723 South State Street, Suite
  400 Ann Arbor, MI 48104
(734) 214-7663
sborgsdorf@dykema.com

Mark P. Fancher (P56223)
Michael J. Steinberg (P43085)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6822
mfancher@aclumich.org
msteinberg@aclumich.org

*Attorneys for Plaintiff-Appellant*
  *American Civil Liberties Union*
  *of Michigan*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P.
   32(a)(7)(B) because this brief contains 5,124 words, excluding the parts of the
   brief exempted by 6 Cir. R. 32(b)(1).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
   and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief
   has been prepared in a proportionally spaced typeface using Microsoft Word
   with 14 Times New Roman.


April 22, 2013                                    Respectfully submitted,

                                                 /s/ Nusrat J. Choudhury
                                                 Nusrat J. Choudhury
                                                 National Security Project
                                                 American Civil Liberties Union
                                                   Foundation
                                                 125 Broad Street, 18th Floor
                                                 New York, NY 10004
                                                 P: (212) 519-7876
                                                 F: (212) 549-2654
                                                 nchoudhury@aclu.org

                                                 *Attorney for Plaintiff-Appellant*
                                                   *American Civil Liberties*
                                                   *Union of Michigan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2013, I electronically filed the foregoing

paper with the Clerk of the Court using the CM/ECF system, which will send

notice of this filing to all counsel of record at their registered e-mail addresses.


April 22, 2013                                    /s/ Nusrat J. Choudhury
                                                  Nusrat J. Choudhury
                                                  American Civil Liberties Union
                                                    Foundation
                                                  125 Broad Street, 18th Floor
                                                  New York City, NY 10004
                                                  P: (212) 519-7876
                                                  F: (212) 549-2654
                                                  nchoudhury@aclu.org

                                                  *Attorney for Plaintiff-Appellant*
                                                    *American Civil Liberties*
                                                    *Union of Michigan*

24